IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TINA M. McLAVEY,            )
                                )
                Plaintiff      )         Civil No. 06-1589-KI
                                )
            v.               )         OPINION AND ORDER
                                )
MICHAEL J. ASTRUE,[1]       )
     Commissioner of Social Security   )
                                )
              Defendant.   )

MAX RAE
P.O. Box 7790
Salem, OR 97303

     Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

DAVID R. JOHNSON
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

      Attorneys for Defendant

KING, District Judge:

      Plaintiff Tina McLavey seeks judicial review of the Social Security Commissioner's final

decision denying her application for Supplemental Security Income under Title XVI of the Social

Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).  The

Commissioner's final decision is affirmed.

<strong><u>BACKGROUND</u></strong>

      Born in 1963, McLavey earned a GED.  Tr. 143, 154.[2]  Between 1990 and 2003 McLavey

worked as waitress, prison cook, prison maintenance person,[3] and  motel housekeeper.  Tr. 149.

      McLavey applied for SSI on March 15, 2003.  Tr. 143-45.  She alleges disability since

January 2003 due to "stroke, optical neuritis, disabled foot, arthritis, asthma, ADHD [attention deficit

hyperactivity-disorder]," chronic migraines, high blood pressure, and carpal tunnel syndrome.  Tr.

146.  She indicates that she "had a stroke," which left her "with a disabled r[ight] foot, chronic

migraines, light/sound sensitivity, and loss of vision in [my] r[ight] eye." *Id.*

      The Commissioner denied McLavey's application initially and upon reconsideration.  Tr.

126-28, 131-35.  A hearing was held before an Administrative Law Judge ("ALJ") on March 9, 2006.

---

      [2]Citations "Tr." refer to indicated pages in the official transcript of the administrative
record filed with the Commissioner's Answer on January 3, 2006 (Docket #11).

      [3]McLavey performed this work while incarcerated.

2 - OPINION AND ORDER

Tr. 54-121.  On May 26, 2006, the ALJ issued an unfavorable decision.  Tr. 34-43.  The Appeals

Council denied review on October 13, 2006, making the ALJ's decision the final decision of the

Commissioner.  Tr. 5-7.  McLavey presently appeals.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps

in determining disability under the meaning of the Act.  20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482

U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If

she is, the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(I).  At step two, the ALJ determines

if the claimant has "a severe medically determinable physical or mental impairment" that meets the

twelve month duration requirement.  20 C.F.R. §§ 416.909; 416.920(a)(4)(ii).  If the claimant does

not have such a severe impairment, she is not disabled.  *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed"

impairment in the regulations.  20 C.F.R. §§ 416.920(a)(4)(iii).  If the impairment is determined to

equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other

relevant evidence in assessing the claimant's residual functional capacity ("RFC").  The claimant's

RFC is an assessment of work-related activities the claimant may still perform on a regular and

continuing basis, despite limitations imposed by her impairments.  20 C.F.R. § 416.920(e), Social

Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform her past relevant

work at step four. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. If the ALJ finds that the claimant's RFC precludes performance of her past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 416.920(a)(4)(v); 416.920(f). If the claimant cannot perform such work, she is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 416.920(g), 416.966.

McLavey challenges the ALJ's evaluation of the evidence and his conclusion that she could perform her past relevant work at step four in the sequential proceedings. She further contends that the ALJ should have found her unable to perform any work in the national economy at step five and therefore found her disabled.

## THE ALJ'S FINDINGS

The ALJ found McLavey's "questionable borderline intellectual functioning" and obesity "severe" at step two in the sequential proceedings. Tr. 36. The ALJ found that McLavey did not have impairments meeting or equaling a listed impairment at step three. Tr. 38. In assessing McLavy's credibility, the ALJ found that she malingers. *Id.* The ALJ assessed McLavey's RFC:

> The undersigned finds that the claimant has the residual functional capacity to perform light work.  She can lift/carry 20 pounds occasionally and 10 pounds frequently.  She can walk/stand and sit for about 6 hours in an 8-hour workday.  She could occasionally climb ladders, rope scaffolds, crawl and overhead reaching.  She should avoid concentrated exposure to smoke, fumes, dust, etc., due to respiratory problems, asthma.  She has no restriction of activities of daily living, no difficulty in maintaining social functioning, no difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration.

Tr. 38.  At step four, the ALJ found that this RFC allows McLavey to perform her past relevant work as a maid.  Tr. 43.  The ALJ alternatively found that McLavey could perform work in the national economy as a document sorter or "marker II."  *Id.*  The ALJ therefore found McLavey not disabled at any time through the date of his decision.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004).  This court must weigh "both the evidence that supports and detracts" from the ALJ's conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The reviewing court "may not substitute its judgment for that of the Commissioner."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record.  *Magallanes*, 881 F.2d at 750; *see* also *Batson*, 359 F.3d at 1193.

## DISCUSSION

McLavey contends the ALJ failed to cite all of her "medically determinable impairments,"

failed to properly assess her credibility and lay witness statements, inaccurately assessed her RFC, and made an erroneous step four finding.

## I.    The ALJ's Step Two Findings

McLavey contends that the ALJ failed to identify "additional medically determinable mental impairments" at step two.  Pl. Opening Br. 24.  The ALJ found McLavey's "questionable borderline intellectual functioning" and obesity "severe" at step two.  Tr. 36.

### A.    Step Two Evaluations

At step two in the sequential proceedings, the ALJ determines if the claimant has a "severe" impairment.  20 C.F.R. § 416.920(a)(4)(ii).  An impairment is "severe" if it "significantly limits your ability to do basic work activities."  20 C.F.R. § 416.920(c), *see* also 20 C.F.R. § 416.921.  Such an impairment must last, or be expected to last, twelve months.  20 C.F.R. § 416.909.

### B.    Discussion

McLavey specifically contends the ALJ erroneously omitted her ADHD history as reported to psychologist Dr. Richardson.  *Id.*  McLavey also contends the ALJ omitted a reviewing physician's note regarding a somatoform disorder diagnosis.  *Id.*  The ALJ's analysis of physician opinions and McLavey's reports of ADHD are discussed in detail below.  Presently, this court notes that the ALJ's analysis at steps four and five must consider all of a claimant's impairments, both severe and non-severe.  20 C.F.R. § 416.945(a)(2).  Because the ALJ proceeded beyond step three, any omission regarding a step two severity finding is inconsequential.  *Lewis v. Astrue*, __ F.3d ___ (9th Cir. 2007) (*available at* 2007 WL 1892867 at *2).

///

6 - OPINION AND ORDER

## II.    McLavey's Credibility

### A.    Credibility Analysis

The ALJ must evaluate a claimant's credibility in order to properly consider the claimant's testimony regarding symptoms and pain.  The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  Absent evidence of malingering, an ALJ must provide "clear and convincing" reasons for finding a claimant not credible." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  The ALJ may cite malingering as a reason for finding a claimant not credible.  *See Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).  In making a malingering finding, the ALJ must cite "affirmative evidence." *Id.*

The Commissioner's decision must be supported by "substantial evidence." *Batson*, 359 F.3d at 1193. "Substantial evidence" is "more than a mere scintilla . . . but less than a preponderance." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995).

### B.    Discussion

McLavey contends that the ALJ failed to perform a "systematic review" in finding her testimony not credible.  McLavey's credibility challenge omits the ALJ's malingering inference.

#### i.    *Malingering*

The ALJ cited several instances of malingering throughout the record.  First, the ALJ cited a report by McLavey's treating physician, Dr. Sayre, that McLavey was "either malingering or has no really valid complaints."  Tr. 37 citing exhibit 12F (Tr. 268).  Second, the ALJ noted that McLavey's nurse practitioner was unable to confirm McLavey's reports of stroke in McLavey's

medical record.  Tr. 38.

Third, the ALJ discussed an evaluation performed by psychologist Dr. Duvall.  Tr. 39.  The ALJ noted that Dr. Duvall administered a Test of Memory Malingering ("TOMM"), stating, "Dr. Duvall stated that the results of this testing strongly support a judgment of malingering of cognitive defects." *Id.*  The ALJ subsequently cited Dr. Duvall's diagnoses, including, "somatization disorder; [rule out] malingering of physical symptoms; [history of] alcohol abuse, reported in remission; *malingering of cognitive defects*; and antisocial personality traits, by history."  Tr. 40 (emphasis added).

The ALJ's findings cited above are supported by the record.  Tr. 268, 424, 451.  McLavey does not challenge the ALJ's acceptance of Dr. Duvall's opinion.  Evaluation of the medical evidence is the province of the ALJ.  *See Batson*, 359 F.3d at 1195.  If the record supports the ALJ's decision, this court must affirm the ALJ's interpretation of the record.  *Id.* at 1193.  For this reason, this court affirms the ALJ's malingering inference.

### ii.    *Other Credibility Considerations*

The ALJ noted additional discrepancies between McLavey's reports and the medical record. Specifically, the ALJ noted that McLavey repeatedly reported a stroke and vision deficits, which are unsupported by the medical record.  Tr. 37, 40, 42.  The record shows that an optometrist was unable to find significant visual deficit and  neurologists could find no evidence of stroke.  Tr. 218-222, 227-29, 272.

Once a claimant shows an underlying impairment, absent a finding of malingering, the ALJ is obligated to give clear and convincing reasons for discrediting related symptom testimony.

*Smolen*, 80 F.3d at 1281-82 (*citing Bunnell v. Sullivan*, 947 F.3d 341, 344 (9th Cir. 1991) (en banc)). Here, despite the ALJ's malingering finding, the medical record does not even support McLavey's reports of visual or neurological impairment. The ALJ is not required to evaluate a claimant's symptom testimony where no underlying pathology occurs. *Id*.

McLavey's submission fails to note the ALJ's malingering discussion, as well as the ALJ's notation that the medical record does not corroborate her alleged visual and stroke deficiencies. For these reasons, this court sustains the ALJ's malingering finding and resultant credibility determination.

## III.    Residual Functional Capacity

McLavey contends the ALJ failed to accurately assess her residual functional capacity before proceeding to steps four and five of the sequential analysis. McLavey does not point to specific allegations of error in the ALJ's RFC assessment, instead stating that the ALJ failed to identify "medically determinable" impairments. Pl. Opening Br. 6, 24-25. McLavey does not contest the ALJ's overall assessments of opinions rendered by evaluating psychologist Dr. Duvall and treating psychologist Dr. Richardson.

McLavey specifically contends the ALJ erroneously omitted discussion of her ADHD, bipolar disorder, obsessive compulsive disorder, posttraumatic stress disorder ("PTSD"), dementia, somatization disorder, antisocial personality traits, and "malingered cognitive defects." Pl. Opening Br. 24.

### i.    ALJ's Discussion

The ALJ noted McLavey's diagnoses of dementia, PTSD, obsessive compulsive disorder, and

ADHD.  Tr. 39.  McLavey's contention that the ALJ omitted discussion of these impairments is therefore unsupported by the record.

### ii.    *Impairments McLavey Reported*

McLavey's histories of ADHD, obsessive-compulsive disorder, and anti-social personality traits are based upon her own reports and testing under her volitional control.  Tr. 250, 363, 425.  An ALJ is not required to credit physician opinion opinions based upon reporting or volitional testing by a claimant found not credible.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  The ALJ noted that psychologist Dr. Richardson predicated his assessment of McLavey's ADHD and OCD upon her reports and that psychologist Dr. Duvall similarly based his personality disorder assessment upon McLavey's reported history.  Tr. 39, 40.  Therefore, the ALJ did not error in omitting McLavey's ADHD, OCD, or antisocial personality traits from her "medically determinable impairments."

In summary, this court again notes that McLavey does not challenge the ALJ's acceptance of Dr. Duvall's opinion and rejection of Dr. Richardson.  The ALJ appropriately incorporated supported aspects of their opinions into his RFC assessment.

## IV.    Lay Evidence

McLavey contends that the ALJ inappropriately evaluated statements submitted by lay witnesses Ronnie Lee, Lynette Page, and Teresa Wilson.  Pl. Opening Br. 26.  The ALJ noted Lee's observation that McLavey uses a cane and that she was "crying and angry" following her evaluation by examining psychologist Dr. Duvall.  Tr. 42.  The ALJ also found, "all of the statements from the claimant's friends or individuals who worked with her (Exhibits 6E, 13E and 15E) . . .  are only lay

witnesses and have been misinformed by her about having a stroke, as she has never had a stroke but keeps saying she has." *Id.* The ALJ noted his malingering finding, discussed above, and concluded, "reliance on what the claimant says is misplaced. These statements supporting the claimant can be given little weight." Tr. 43.

**a.    Standards**

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 416.913(d); 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment, but may reject lay testimony inconsistent with the medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Lewis*, 236 F.3d at 512. If an ALJ rejects lay witness testimony entirely, he must give reasons germane to the witness. *Nguyen*, 100 F.3d at 1467.

**b.    Discussion**

McLavey contends that, "the Commissioner failed to identify any particular statement as being without observational basis," and that, "there is no evidence to support the Commissioner's finding that Ms. [Page] and Ms. Wilson were 'misinformed by her about having a stroke.'" Pl. Opening Br. 27.

**i.    *Ronnie Lee and Lynette Page***

The ALJ reiterated Lee's reports that "when they go to the store she uses a cane" and that, while Lee did not attend McLavey's psychological evaluation, she was "crying and angry" following

her assessment.  Tr. 42.  The ALJ did not explicitly reject these observations.

Lynette Page submitted a letter to the record stating, "Since Ms. McLavey's medical issues I have observed that she has had bouts of depression, struggles with her vision, she was forced to resign her job."  Tr. 207.  Page also stated, "she uses a cane now and is prone to fall" and that McLavey is unable to walk long distances.  *Id.*

The medical record does not support the statements of Lee and Page that McLavey requires a cane, has visual deficiencies, or that her depression precludes work activity.  The ALJ need not incorporate lay witness testimony unsupported by the medical evidence.  *Lewis*, 236 F.3d at 512. The ALJ noted this discrepancy and, hence, provided an "arguably germane" reason for rejecting their testimony.  *Id.*

### ii.    *Teresa Wilson*

Wilson submitted an undated letter to the record stating that McLavey was "unable to care for herself" for "days and even weeks at a time."  Tr. 211.  Wilson did not refer to McLavey's allegation of stroke.  Wilson furthermore does not state why McLavey was unable to care for herself or what activities McLavey was unable to complete.  Wilson also stated that she helped McLavey recover from her "surgery in September."  *Id.*  This presumably refers to McLavey's September 2004 hysterectomy, which is not the basis of her current claim.  Finally, Wilson noted that McLavey has "a lot of problems with remembering things."  *Id.*  As noted, cognitive testing showed that McLavey malingered alleged cognitive impairments.  For this reason, Wilson's statements regarding McLavey's memory is inconsistent with the medical record.  As noted above, the ALJ may reject statements where such discrepancy arises.  *Lewis*, 236 F.3d at 512.

McLavey fails to show that the witnesses above made independent observations regarding medically determinable impairments.  For this reason, the ALJ's rejection of their testimony is sustained.  *Lewis*, 236 F.3d at 512.

## V.    The ALJ's Findings at Steps Four and Five

McLavey contends that the ALJ made erroneous step four findings and that the ALJ failed to make step five findings.  Pl. Opening Br. 32-33, Pl. Reply Br. 14.

### a.    Step Four: Past Relevant Work

In considering whether McLavey could return to her past work, the ALJ solicited testimony from a vocational expert ("VE").  Tr. 105-08, 112-18.  The ALJ's hypothetical questions to the VE included limitations supported by the medical evidence.  Tr. 113-14, 116.  In making his findings based upon VE testimony, the ALJ did not include additional limitations suggested by McLavey's counsel.  The VE stated that a hypothetical individual with McLavey's supported RFC could return to her past relevant work as a maid or housekeeper.  Tr. 114.

The ALJ is not required to include unsupported limitations in his hypothetical questions to a VE.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2001).  For the reasons established above, McLavey fails to show substantive error in the RFC assessment.  The ALJ appropriately relied upon this RFC and the VE's testimony in his step four finding.  *Id*.  McLavey fails to show error in the ALJ's step four conclusion.

### b.    Step Five: Work in the National Economy

McLavey also contends that the ALJ made no step five findings "within the residual functional capacity he found plaintiff to have."  Pl. Reply Br. 14.

13 - OPINION AND ORDER

The ALJ cited the VE's testimony that an individual with McLavey's RFC could "also perform work as a document sorter, telephone quotation clerk and as a marker II." Tr. 43, 116. The ALJ noted that these jobs exist in significant numbers in the national economy. *Id.* The ALJ cited this finding in his conclusion, stating, "it is concluded that the claimant retains the residual functional capacity to perform her past relevant work as a maid. Also work as a document sorter or marker II." *Id.* This court finds that the ALJ made an identifiable step five finding and that this finding was based upon a properly construed RFC assessment.

### c.    The ALJ's Reliance Upon *The Dictionary of Occupational Titles*

McLavey argues that the ALJ's vocational findings are inconsistent with the ALJ's RFC assessment because the VE testified that the *Dictionary of Occupational Titles* ("*DOT*") states that the "document sorter" and "marker II" positions respectively require level two and level three "GED reasoning" level. Pl. Opening Br. 33, *citing* Tr. 118. McLavey further contends this reasoning is beyond that specified in her RFC.

"GED reasoning" in this context refers to Appendix 3 of the *DOT*, which establishes definitions for specific reasoning levels associated with occupations identified in the *DOT*. The Commissioner misreads McLavey's submission, asserting that she refers to a "General Equivalency Degree," which is an educational consideration. Def. Br. 16.

GED level three reasoning specifies an ability to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" as well as an ability to "deal with problems involving several concrete variables in or from standardized situations." *DOT*, Appendix 3, *available at* http://www.occupationalinfo.org/appendxc_1.html#III (last

visited July 11, 2007).

The ALJ's RFC included no mental restrictions.  Tr. 38.  Because McLavey's challenge to the ALJ's RFC fails for the reasons above, her suggestion that the VE's testimony is here inconsistent with her RFC also fails.

McLavey finally contends that the VE's testimony is invalid because the ALJ failed to directly ask the VE if his testimony was consistent with the *DOT*.   The ALJ first asked the VE to "give us" "Department of Labor *Dictionary of Occupational Titles* data." Tr. 105.  This court finds that such direction and subsequent discussion indicative of sufficient compatibility with *DOT* standards.  *See Massachi v. Astrue*, 486 F.3d 1153-54 (9th Cir. 2007).

### d.    Conclusion: Step Four and Five Findings

In summary, the ALJ's finding that McLavey could return to her past relevant work as a motel housekeeper or perform other work in the national economy is based upon an adequate RFC assessment and supported by appropriate vocational testimony.  These findings are also sustained.

### <u>CONCLUSION</u>

The Commissioner's decision that McLavey did not suffer from disability and is not entitled to benefits under Title XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence.  The Commissioner's decision is AFFIRMED and the case is dismissed.

IT IS SO ORDERED.

Dated this _____23rd_____ day of July, 2007.

_/s/ Garr M. King_____
Garr M. King
United States District Judge

15 - OPINION AND ORDER